Michael R. Matthias, SBN 57728
*mmatthias@bakerlaw.com*
Matthew D. Pearson, SBN 294302
*mpearson@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  (310) 820-8800
Facsimile:   (310) 820-8859

*Attorneys for Plaintiffs*
KCG AMERICAS LLC and
KCG HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KCG AMERICAS LLC, a Delaware limited liability company, and KCG HOLDINGS, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ZHENGQUAN ZHANG, an individual,<br><br>Defendant. | Case No. 5:17-cv-1953<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF THE DEFEND TRADE SECRETS ACT;**<br>**(2) VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT;**<br>**(3) VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT;**<br>**(4) BREACH OF CONTRACT;**<br>**(5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(6) VIOLATION OF CALIFORNIA PENAL CODE § 502; AND**<br>**(7) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*** |

Plaintiffs KCG AMERICAS LLC ("KCG"), a Delaware limited liability corporation, and KCG HOLDINGS, INC. ("KCG HOLDINGS"), a Delaware

corporation, (collectively, "Plaintiffs") complain and allege against Defendant ZHENGQUAN ZHANG ("Defendant") as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. KCG HOLDINGS is a publicly-traded holding company incorporated under the laws of the State of Delaware with its principal place of business in Jersey City, New Jersey. KCG Holdings is the indirect parent of KCG.

2. KCG is a Delaware limited liability company with its principal place of business in New York, New York.

3. Defendant is a Chinese national residing in Santa Clara, California pursuant to an H-1B visa.

4. Pursuant to 28 U.S.C. § 1331, this Court has original subject-matter jurisdiction over Plaintiffs' first and second causes of action for violations of the Defend Trade Secrets Act and 18 U.S.C. § 1030, respectively. Additionally, this Court has subject-matter jurisdiction over Plaintiffs' remaining causes of action under 28 U.S.C. § 1367.

5. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this district because Defendant resides in Santa Clara, California.

## II. FACTUAL ALLEGATIONS

6. KCG is a financial institution registered with the Securities and Exchange Commission and with the Financial Industry Regulatory Authority. KCG is in the business of trading securities and is one of the world's largest independent market makers. KCG's U.S. customer market-making business is hereinafter referred to as the "Market-Making Business."

7. Plaintiffs write and deploy computer code and algorithmic models for their trading systems on a Unix-based operating system ("Unix System"). Plaintiffs' computer source code and market-making algorithms ("Confidential Information") are highly confidential and constitute some of Plaintiffs' most valuable trade secrets.

8.      Plaintiffs protect their Confidential Information by, among other things, creating user names and passwords for access to their systems and by restricting access based on entitlements that are tied to employees' user names and passwords. Plaintiffs also require their employees to sign numerous agreements and adhere to company policies in which their employees promise to keep Plaintiffs' Confidential Information confidential. Plaintiffs do not permit their employees to utilize external e-mail or file sharing websites on their work computers. Plaintiffs further do not permit their employees to download data from their work computers to USB drives or other portable storage devices.  Within the Unix System, Plaintiffs maintain certain code repositories and file directories, including for the Market-Making Business, that are not generally accessible except to those employees whose user credentials are entitled for more restricted access.

9.      Defendant ZHENGQUAN ZHANG ("Defendant") was hired by Knight Equity Markets, L.P. ("Knight") [1], the predecessor company of KCG, as a Technical Operations Support person on March 29, 2010 and worked for KCG thereafter (hereinafter, "KCG" shall include Knight). On March 27, 2017, Defendant was placed on administrative leave, and on April 7, 2017, his employment was terminated.

10.     As a condition of his employment with KCG, Defendant signed an offer letter from KCG (the "Offer Letter") on February 24, 2010. In doing so, Defendant "acknowledge[d] and confirme[d] that all source code or other information… developed or used by [Defendant], [Knight or affiliates of Knight] during [his] employment at Knight and/or owned or licensed by [Knight or its affiliates], is deemed the confidential information and trade secrets of [Knight and its affiliates] and may not be used by [Defendant] outside of [his] employment at Knight or after [his] departure from the Company."

---

[1] On July 1, 2013, Knight Capital Group, Inc., the parent company of Knight Equity Markets, L.P., merged with GETCO Holding Company to form KCG Holdings, Inc. As used herein, the terms "KCG" and "KCG Holdings" include their respective predecessors.

11.     Defendant also agreed to be bound by the terms and conditions of Exhibit A to the Offer Letter, titled "Applicable Restrictive Covenants to Offer Letter to Zhengquan Zhang." Exhibit A contained a provision that stated: "You agree not to engage in any unauthorized use or disclosure of the Company's Confidential Information…. You further agree to use the Company's Confidential Information and other benefits of your employment to further the business interests of the Company…. You further agree not to use the Company's Confidential Information or any document or record concerning the business and affairs of the Company ('Company Record') for any purpose without prior written authorization of an officer of the Company, except that you may use Confidential Information and Company Records to perform your duties."

12.     On March 29, 2010, Defendant signed an "Acknowledgment by Employee and Director" form, which was attached to the "Code of Business Conduct and Ethics." By signing the "Acknowledgment by Employee and Director" form, Defendant acknowledged that he had "read the Code of Business Conduct and Ethics" and that he "understand[s] and agree[s] to abide by its requirements."

13.     The Code of Business Conduct and Ethics required Defendant to "maintain the confidentiality of confidential information entrusted to [him] by the Company…, except when disclosure is authorized by the Legal and Compliance Department or required by laws or regulations."

14.     On April 27, 2010, Defendant signed an "Acknowledgment and Disclaimer" wherein he acknowledged that he had received "th[e] Employee Handbook ('Handbook') of Knight Capital Group, Inc. and its subsidiaries" and that he understood that his "employment [was] governed by the policies described in th[e] Handbook."

15.     The Handbook to which Defendant agreed to be bound stated: "The Company has an interest in protecting the Company and those with whom it does

- 4 -

business, and any concern regarding proprietary information should be reported promptly to any supervisor…. Given the nature of the Company's business, protecting proprietary and confidential information is of vital concern to the Company. Such information is one of the most important assets of the Company as it enhances the Company's opportunities for continued growth. Employees must not disclose to third parties any proprietary and confidential information obtained during their employment with the Company or use such information for purposes not related to their employment."

16. Additionally, the Handbook stated: "Company property includes not only tangible property, such as desks, typewriters and computers, but also intangible property such as business data, formulas and information. Of particular importance is proprietary information and confidential information. Proprietary information includes all information, including intellectual property or trade secrets, obtained or created by employees in the course of their work for the Company. Confidential information is any Company information that is not known generally to the public or the industry . . . [A]lgorithms, information concerning algorithms, . . . process and procedure descriptions, research plans, computer systems, and trade secrets are examples of confidential information. Given the nature of the Company's business, protecting proprietary and confidential information is of vital concern to the Company. Such information is one of the most important assets of the Company as it enhances the Company's opportunities for continued growth. Employees must not disclose to third parties any proprietary and confidential information obtained during their employment with the Company or use such information for purposes not related to their employment.  In addition, all employees are expected to observe good security practices, and keep proprietary and confidential information secure from outside visitors and all other persons who do not have a legitimate reason to see or use such information. Any Company procedures regarding document control, restricted access to files, and other such

1  procedures are to be strictly observed. Failure to adhere to the Company's policies
2  regarding proprietary and confidential information is considered grounds for
3  discipline, up to and including termination. . . Employee's obligations concerning
4  proprietary and confidential information extend beyond the length of employment.
5  Upon termination of employment, whether voluntary or involuntary, an employee is
6  prohibited from utilizing any confidential or propriety information obtained or
7  created during the course of their employment with Knight."

8      17.    In 2012, Defendant completed an employee certification ("Employee
9  Certification"). In that Employee Certification, Defendant "acknowledge[d] that [he
10 had] read, underst[ood], complied with and agree[d] to abide by Knight's
11 [Confidential Information] and Invention Assignment Agreement." [2]

12     18.    The Confidential Information and Invention Assignment Agreement
13 stated: "At all times during the term of my employment and thereafter, I will hold
14 in the strictest confidence, and not use, except for the benefit of the Company, or to
15 disclose to any person, firm or corporation without written authorization any
16 Confidential Information."

17     19.    Defendant also agreed to the terms and conditions of KCG's May 2011
18 Restricted Stock Unit Agreement, which KCG provided to a number of its
19 employees. Restricted Stock Unit Agreements are not agreed to by manually
20 signing a document. Instead, Restricted Stock Unit Agreements are agreed to by
21 accepting the stock award. Defendant accepted such a stock award on May 25,
22 2011.

23     20.    The May 2011 Restricted Stock Unit Agreement required Defendant
24 "not to engage in any unauthorized use or disclosure of the Company's Confidential
25 Information…."

---

[2] The Employee Certification erroneously identified the Confidential Information and Invention Assignment Agreement as the "Confidentiality and Invention Assignment Agreement."

21. From the date he was hired until December 1, 2016, Defendant's access to KCG's Unix System, known as "Unix Entitlements," was limited to those areas relevant to his role as a Trading Operations Specialist.

22. However, on December 1, 2016, Defendant's Unix Entitlements were elevated to "root access," so that he could assist KCG's Infrastructure Department with an ongoing data center migration.

23. With "root access," Defendant could access areas of the Unix System that were previously inaccessible to him, including the restricted code repositories and file directories of the Market-Making Business.

24. KCG employs a Microsoft Windows-based operating system ("Windows System") for email and other applications. Defendant was given a user name and password to access the Windows System. The elevation of Defendant's Unix Entitlements did not increase his privileges on the Windows System.

25. On March 26, 2017, a KCG employee reported to KCG's Network Security Team concerns that his e-mail had been compromised.

26. KCG's Network Security Team began reviewing the circumstances giving rise to the employee's concerns and observed that the suspected compromise was occurring through a computer assigned to Defendant.

27. KCG's Network Security Team thereafter took steps to restrict Defendant's access to KCG's Windows System.

28. On March, 27, 2017, Defendant e-mailed his superiors at KCG. In his e-mail, Defendant admitted that he had obtained other employees' user names and passwords and logged into those employees' desktops without authorization. Defendant further stated in his e-mail that his Windows account had been terminated. Additionally, Defendant stated, "I take full responsibility of what I did."

29. KCG later learned that Defendant had deleted history files and some of his directories, and that KCG's building access log showed that Defendant entered the office the night of Sunday, March 26, 2017. On information and belief, it was

that night, after Defendant learned that he had been denied access to the Windows System, that he deleted the files and directories.

30. Using its system back-up directories and the files contained therein, Plaintiffs were able to determine that Defendant had copied Confidential Information from the Unix System and, it appears, from the Windows System and transmitted the copied Confidential Information to at least two third-party, web-based repositories, known as GitLab Inc. and GitHub, Inc. (collectively, the "Repositories"). Defendant also had log-in information for a third repository, known as Bitbucket, which, upon information and belief, is owned and/or operated by Atlassian, Inc.

31. The files in the system back-up directories also showed that Defendant's surreptitious activities began in mid-December of 2016 and included writing computer programs that copied and transmitted the Confidential Information on numerous occasions.

## FIRST CAUSE OF ACTION

**(Violation of the Defend Trade Secrets Act)**

32. Plaintiffs incorporate by reference Paragraphs 1 through 31 as though fully set forth in this cause of action.

33. Plaintiffs' Confidential Information constituted and constitutes a "trade secret" under 18 U.S.C. § 1839(3) because it was, and is, technical information that Plaintiffs took reasonable measures to keep secret, including having KCG's employees, including Defendant, sign numerous agreements and adhere to company policies preventing KCG employees from disclosing Plaintiffs' Confidential Information to persons outside KCG and restricting access to the Confidential Information. Moreover, Plaintiffs derive independent economic value from their Confidential Information because the Confidential Information provides Plaintiffs with a competitive advantage in their industry.

34. Plaintiffs were the "owners" of the Confidential Information, as defined by 18 U.S.C. § 1839(4), because Plaintiffs had rightful legal title to the Confidential Information.

35. Plaintiffs utilize their Confidential Information to make markets on securities exchanges and otherwise around the world. The Confidential Information is, therefore, used in interstate and foreign commerce.

36. At no point did Plaintiffs expressly or by implication consent to Defendant copying the Confidential Information and transmitting to the Repositories the Confidential Information.

37. Defendant misappropriated Plaintiffs' Confidential Information because he (1) stole Plaintiffs' Confidential Information when he, without authorization, accessed, copied, and transmitted to the Repositories Plaintiffs' Confidential Information and (2) did so in direct violation of Defendant's duty to maintain confidentiality, as codified in Defendant's Offer Letter, May 2011 Restricted Stock Unit Agreement, and other agreements to follow the Plaintiffs' policies regarding confidentiality.

38. Defendant's conduct has proximately caused Plaintiffs to suffer damages in an amount to be proven at trial.

39. Moreover, because Defendant remains in possession of Plaintiffs' Confidential Information, Plaintiffs are entitled to and seek, pursuant to 18 U.S.C. § 1836(b)(2), a civil seizure of the property necessary to prevent the further propagation or dissemination of Plaintiffs' Confidential Information.

## SECOND CAUSE OF ACTION

**(Violation of the Federal Computer Fraud and Abuse Act,**
**18 U.S.C. § 1030)**

40. Plaintiffs incorporate by reference Paragraphs 1 through 39 as though fully set forth in this cause of action.

41. Defendant knowingly caused the transmission of Plaintiffs' Confidential Information when he, without authorization, accessed, copied and transmitted Plaintiffs' Confidential Information to the Repositories.

42. The computers of KCG constituted and constitute "protected computers" under 18 U.S.C. § 1030(e)(2)(B) because KCG's computers were and are connected to the internet.

43. In accessing and transmitting the Confidential Information, Defendant intentionally or recklessly caused damage to Plaintiffs.

44. As a direct and proximate result of Defendant's violation of the Federal Computer Fraud and Abuse Act, Plaintiffs have suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

**(Violation of the California Uniform Trade Secrets Act,**
**Cal. Civ. Code § 3426, *et seq.*)**

45. Plaintiffs incorporate by reference Paragraphs 1 through 44 as though fully set forth in this cause of action.

46. Plaintiffs' Confidential Information constituted and constitutes a "trade secret" under Cal. Civil Code § 3426.1(d) because it was, and is, technical information that Plaintiffs took reasonable measures to keep secret, including having KCG's employees, including Defendant, sign agreements preventing KCG employees from disclosing Plaintiffs' Confidential Information to persons outside KCG and restricting access to its Confidential Information. Moreover, Plaintiffs derive independent economic value from their Confidential Information because the Confidential Information provides Plaintiffs with a competitive advantage in their industry.

47. Plaintiffs are the owners of the Confidential Information because Plaintiffs had rightful legal title to the Confidential Information.

48. At no point did Plaintiffs expressly or by implication consent to Defendant copying the Confidential Information and uploading to the Repositories the Confidential Information.

49. Defendant misappropriated Plaintiffs' Confidential Information because he (1) stole Plaintiffs' Confidential Information when he, without authorization, copied and transmitted to the Repositories Plaintiffs' Confidential Information and (2) did so in direct violation of Defendant's duty to maintain confidentiality, as codified in Defendant's numerous agreements with KCG.

50. As a direct and proximate result of Defendant's misappropriation, Plaintiffs have suffered damages in an amount to be proven at trial.

51. Pursuant to Cal. Civil Code § 3426.3(c), Plaintiffs seek exemplary damages in the amount not exceeding twice any award made for actual loss or unjust enrichment caused by Defendant's misappropriation because Defendant's theft of Plaintiffs' Confidential Information constitutes willful and malicious misappropriation.

52. Moreover, pursuant to Cal Civil Code § 3426.4, Plaintiffs seek an award of their reasonable attorneys' fees and costs because Defendant's theft of Plaintiffs' Confidential Information constitutes willful and malicious misappropriation.

53. Finally, because Defendant remains in possession of Plaintiffs' Confidential Information, Plaintiffs are entitled to and seek, pursuant to Cal. Civil Code § 3426.2, an injunction preventing Defendant from further propagating or disseminating Plaintiffs' Confidential Information.

## FOURTH CAUSE OF ACTION
### (Breach of Contract on behalf of KCG)

54. KCG incorporates by reference Paragraphs 1 through 53 as though fully set forth in this cause of action.

55. Defendant executed the Offer Letter and Code of Business Conduct and Ethics and agreed to comply with the terms set forth in the Employee Handbook, Confidential Information and Invention Assignment Agreement , and May 2011 Restricted Stock Unit Agreement as part of his employment with KCG. As such, these documents, and the terms contained therein, constituted a valid and binding agreement ("Agreement") between KCG and Defendant.

56. KCG has performed all obligations imposed on it under the Agreement or has been excused from performance by Defendant's breach.

57. Defendant breached the Agreement when he, without authorization, copied and transmitted to the Repositories Plaintiffs' Confidential Information.

58. KCG has suffered injury and damages as a direct and proximate result of Defendant's breach in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing on behalf of KCG)

59. KCG incorporates by reference Paragraphs 1 through 58 as though fully set forth in this cause of action.

60. The Agreement was valid and binding on KCG and Defendant.

61. KCG has performed all obligations imposed on it under Agreement or has been excused from performance by Defendant's breach.

62. Implied in every valid and enforceable agreement is the covenant of good faith and fair dealing. The covenant imposes on each party to the agreement the duty to do, among other things, everything that the agreement presupposes that each party will do to accomplish the agreement's purpose.

63. Defendant's actions, including, but not limited to, copying and transmitting to the Repositories Plaintiffs' Confidential Information, have violated the implied covenant of good faith and fair dealing contained in the Agreement.

64. Defendant's breach of the implied covenant of good faith and fair dealing directly and proximately caused KCG to suffer injury and damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Violation of California Penal Code § 502)

65. Plaintiffs incorporate by reference Paragraphs 1 through 64 as though fully set forth in this cause of action.

66. Defendant knowingly and without permission accessed and used the computers of Plaintiffs in violation of Cal. Penal Code § 502(c)(3) and (7).

67. Defendant also knowingly caused the transmission of Plaintiffs' Confidential Information when he, without authorization, copied and transmitted to the Repositories Plaintiffs' Confidential Information.

68. As a direct and proximate result of Defendant's violation of Cal. Penal Code § 502, Plaintiffs have suffered damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200

69. Plaintiffs incorporate by reference Paragraphs 1 through 68 as though fully set forth in this cause of action.

70. Defendant's acts and practices as described herein are unlawful, unfair, and/or fraudulent, in violation of the Unfair Competition Law, California Business and Professions Code §17200 *et seq*.

71. Specifically, Defendants' acts were unlawful because Defendant violated 18 U.S.C. § 1030 and Cal. Penal Code § 502.

72. Additionally, Defendant's acts were unfair because by copying and transmitting to the Repositories Plaintiffs' Confidential Information, Defendant intentionally endangered Plaintiffs by subjecting them to trade secret misappropriation, loss in the value of their Confidential Information, and lost profit opportunities if others are able to replicate Plaintiffs' trading strategies.

- 13 -

COMPLAINT

73. Finally, Defendant's acts were fraudulent because Defendant, despite being contractually obligated to maintain the confidentiality of Plaintiffs' Confidential Information and with full knowledge that his conduct was not permitted, copied and transmitted to the Repositories Plaintiffs' Confidential Information.

74. As a direct and proximate result of Defendant's unlawful, unfair, and/or fraudulent actions, Defendant, on information and belief, has wrongfully profited. Therefore, Plaintiffs seek restitution and disgorgement of all amounts obtained by Defendant as a result of his misconduct alleged herein.

75. Moreover, because Defendant remains in possession of Plaintiffs' Confidential Information, Plaintiffs are entitled to and seek an injunction preventing Defendant from further propagating or disseminating Plaintiffs' Confidential Information.

## PRAYER FOR RELIEF

**WHEREFORE,** relief is prayed for as follows:

**On the First Cause of Action, Plaintiffs seek:**

1. A civil seizure of the property necessary to prevent the further propagation or dissemination of Plaintiffs' Confidential Information;

**On the Third Cause of Action, Plaintiffs seek:**

2. Exemplary damages in an amount sufficient to deter Defendant from further engaging in fraudulent conduct;

3. An award of Plaintiffs' reasonable attorneys' fees and costs;

**On the First, Third, and Seventh Causes of Action, Plaintiffs seek:**

4. An injunction preventing Defendant from further disseminating Plaintiffs' Confidential Information;

**On the Fourth and Fifth Causes of Action, KCG seeks:**

5. Damages in an amount to be proven at trial;

| | | |
|---|---|---|
|1|6.|Costs of suit incurred herein and reasonable attorneys' fees as permitted by law; and|
|3|7.|Such other and further relief as the Court may deem just and proper.|

**On the Seventh Cause of Action, Plaintiffs seek:**

| | | |
|---|---|---|
|5|8.|Restitution and disgorgement of all amounts obtained by Defendant as a result of his misconduct alleged herein;|

**On the First. Second, and Third Causes of Action, Plaintiffs seek:**

| | | |
|---|---|---|
|8|9.|Damages in an amount to be proven at trial;|
|9|10.|Costs of suit incurred herein and reasonable attorneys' fees as permitted by law; and|
|11|11.|Such other and further relief as the Court may deem just and proper.|

Dated:  April 7, 2017                                  BAKER & HOSTETLER LLP


By: */s/Matthew D. Pearson*
    Michael R. Matthias
    Matthew D. Pearson

*Attorneys for Plaintiffs*
KCG AMERICAS LLC and KCG HOLDINGS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND